IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No: 3:21-CR-41 (CJN) |
| | : | |
| | : | |
| | : | 40 U.S.C. § 5104(e)(2)(G) |
| | : | **(Parading Demonstrating, or Picketing in** |
| **v.** | : | **a Capitol Building)** |
| | : | |
| **DOUGLAS SWEET,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**STATEMENT OF OFFENSE**

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Douglas Sweet, with the concurrence of her attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The United States Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking

windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the Capitol, including the danger posed by individuals who had entered the Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Sweet's Participation in the January 6, 2021, Capitol Riot*

8. Sweet traveled with his friend, Cindy Fitchett, from Virginia to attend the rally the former president, Donald Trump, planned to hold in Washington, D.C. on January 6, 2021. After arriving in Washington, he and Fitchett made their way to the Capitol

9. Sometime during the early afternoon of January 6, 2021, Fitchett recorded a video of herself and Sweet approaching an entrance into the Capitol with a large crowd around them yelling and making banging noises. Fitchett, with the camera turned on herself, stated in a raised voice, "We are storming the Capitol. We have broken in. Patriots arise." Shortly after then, Sweet and Fitchett unlawfully entered the Capitol.

10. Video surveillance depicted Sweet and Fitchett walking down a corridor in the Capitol Visitors Center, which is part of the Capitol building, shortly after 2:30 p.m., toward the end of the corridor area where U.S. Capitol Police officers had formed a defensive line. Other rioters also gathered in this corridor. The officers issued commands for the rioters to leave the building. Sweet maintains he did not hear those commands. When rioters refused their commands, the officers began arresting individuals who had unlawfully entered the building, including Sweet and Fitchett. The Federal Bureau of Investigation ("FBI") uncovered no evidence that Sweet and Fitchett engaged in violent or disruptive conduct at the Capitol grounds or inside the building.

11. Following the Capitol Riot, Sweet gave an interview with a local news station in Virginia, during which he stated he went to DC hoping to "talk to" the House and Senate and realized he might have to "pretty much force [his] way in." But he also stated, "I did not go with any malice or intention of malice. Those that committed those – the fights – the tear gassing, [. . ] throwing stuff at police, that wasn't in my game plan at all." According to the news report, Sweet said he was not trying to stop the electoral certification, but wanted his voice heard.

12. Sweet cooperated with law enforcement following his arrest. He gave two separate voluntary interviews with the FBI and consented to a search of his cellphone. He also voluntarily provided his password and screenname so law-enforcement authorities could search his Facebook page.

13. Sweet knew at the time he entered the Capitol that he did not have permission to enter the building and he paraded, demonstrated, or picketed inside the building.

                         Respectfully submitted,

                         CHANNING D. PHILLIPS
                         Acting United States Attorney
                         D.C. Bar No. 415793

By:   */s/ Seth Adam Meinero*
       SETH ADAM MEINERO
       Trial Attorney
       Detailee
       D.C. Bar No. 976587

       */s/ Susan Lehr*
       SUSAN LEHR
       Assistant United States Attorney
       Detailee
       Nebraska Bar No.19248

## DEFENDANT'S ACKNOWLEDGMENT

I, Douglas Sweet, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: *Aug 9 2021*    *Douglas A Sweet*
Douglas Sweet
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8/9/2021    *Cara Halverson*
Cara Kurtz Halverson, Esq.
Attorney for Defendant